No. 11-1286

**UNITES STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

The American Civil Liberties Union of Illinois,
Plaintiff-Appellant,

v.

Anita Alvarez,
Defendant-Appellee.

Appeal from the United States District Court, Northern District of Illinois, Eastern Division,
Case No. 10 C 5235
Honorable Suzanne B. Conlon, Judge Presiding

# BRIEF OF THE DEFENDANT-APPELLEE, ANITA ALVAREZ

ANITA ALVAREZ
State's Attorney of Cook County
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-5440

*Attorney for Defendant-Appellee, Anita Alvarez*

PATRICK T. DRISCOLL, JR.
Deputy State's Attorney
Chief, Civil Actions Bureau

DONALD J. PECHOUS
PAUL A. CASTLIGLIONE
JEFFREY S. MCCUTCHAN
JAMES C. PULLOS
Assistant State's Attorneys

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**


Table of Contents ..... i

Table of Authorities ..... iii

Jurisdictional Statement ..... 1

Statement of the Issues ..... 1

Statement of the Case ..... 1

Summary of Argument ..... 2

Argument ..... 5

I. Standard of review ..... 5

II. The district court correctly dismissed ACLU's claims for declaratory and injunctive relief ..... 5

A. ACLU and its members lack standing to bring claims for equitable relief against the State's Attorney ..... 6

1. ACLU cannot demonstrate an injury in fact ..... 7

a. ACLU cannot demonstrate a personal and concrete interest ..... 8

b. ACLU is not exposed to threat of actual or imminent harm, but merely conjectural or hypothetical injury ..... 9

c. ACLU does not demonstrate a credible threat of prosecution ..... 12

III. ACLU does not allege a cognizable First Amendment claim ..... 15

A. The ACLU program is not protected by the First Amendment ..... 15

1. The Act does not violate ACLU's First Amendment rights ..... 16

a. If anything, the Act promotes robust and uninhibited speech ..... 16

b. The interception of matters of public concern is not protected under the First Amendment ..... 18

2. ACLU improperly asserts a right to receive police-civilian encounters ..... 19

a. No right to receive without alleging all speakers are willing speakers ..... 19

b. The Act does not regulate willing speakers ..... 22

c. The right to receive does not include the right to audio-record ..... 23

d. No established right to audio-record police officers exists ..... 24

e. Video-recording and photographing are qualitatively different from audio-recording ..... 27

B. ACLU has not established that the Act affects its freedom of press ..... 28

1. Freedom of press does not confer a special right of access ..... 29

2. ACLU's right to gather information in public is not unlimited ..... 31

C. ACLU does not have a right to petition government for redress on behalf of third parties ..... 34

IV. Even if the Act restricts speech, it is a valid time, place, and manner restriction ..... 35

A. The Act does not place restrictions based on content ..... 35

1. The Act is content-neutral ..... 35

2. The Act advances legitimate interests and is narrowly tailored ..... 37

B. The Act does not restrict speech based on content or viewpoint........ 42

V. The *Younger* abstention doctrine precludes federal interference through injunctive relief........ 43

VI. ACLU cannot establish the elements for a preliminary injunction ........ 45

CONCLUSION........ 47

Certificate of Compliance with F.R.A.P. Rule 32(a)(7)........ 48

Circuit Rule 31(e)(1) Certification........ 49

Proof of Service ........ 50

## TABLE OF AUTHORITIES

Cases Page

*520 South Michigan Avenue Associates, Ltd. v. Devine*,
433 F.3d 961 (7th Cir. 2005)........ 45

*Adkins v. Guam Police Dept.*,
09-00029, 2010 U.S. Dist. LEXIS 87353 (D. Guam. Aug. 24, 2010) ........ 27

*Aldridge v. Forest River, Inc.*,
635 F.3d 870 (7th Cir. 2011)........ 5

*Alvarez v. Smith*,
130 S. Ct. 576 (2009)........ 6

*Arizona v. Johnson*,
129 S. Ct. 781 (2009)........ 25, 41

*Arreola v. Godinez*,
546 F.3d 788 (7th Cir. 2008)........ 6, 35, 43

*Babbit v. United Farm Workers Nat'l Union*,
442 U.S. 289 (1979)........ 8

*Baker v. Carr*,
369 U.S. 186 (1962) ........................................ 7

*Banks v. Gallagher*,
08-cv-1110, 2010 U.S. Dist. LEXIS 55308 (M.D. Penn. Mar. 18, 2010) ........ 24

*Bartnicki v. Vopper*,
532 U.S. 514 (2001) ........................................ 18, 35, 36, 38

*Basiardanes v. Galveston*,
682 F.2d 1203 (5th Cir. 1982) ........................................ 22

*Blackston v. Alabama*,
30 F.3d 117 (11th Cir. 1994) ........................................ 31

*Bd. of Educ., Island Trees Union Free Sch. Dist Number 26 v. Pico*,
457 U.S. 853 (1982) ........................................ 20

*Boehner v. McDermott*,
484 F.3d 573 (D.C. Cir. 2007) ........................................ 18

*Bond v. Utreras*,
585 F.3d 1061 (7th Cir. 2009) ........................................ 21

*Boyle v. Landry*,
401 U.S. 77 (1971) ........................................ 3, 10, 11, 45

*Branzburg v. Hayes*,
408 U.S. 665 (1972) ........................................ 30, 33, 41

*Brown v. Kerr-McGee Chem. Corp.*,
767 F.2d 1234 (7th Cir. 1985) ........................................ 46

*Caplin & Drysdale, Chartered v. United States*,
491 U.S. 617 (1989) ........................................ 8

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ........................................ 3, 7, 11, 13, 35

*City of Ontario v. Quon*,
130 S. Ct. 2619 (2010) ........................................ 40

*Clark v. Community for Creative Non-Violence*,
468 U.S. 288 (1984) .......... 36

*Colten v. Kentucky*,
407 U.S. 104 (1972) .......... 25

*Competitive Enterprise Institute v. U.S. Dep't of Transp.*,
856 F.2d 1563 (D.C. Cir. 1988) .......... 21

*Consolidated Canal Co. v. Mesa Canal Co.*,
177 U.S. 296 (1900) .......... 46

*Craig v. Harney*,
331 U.S. 367 (1947) .......... 34

*Curtis Publishing Co. v. Butts*,
388 U.S. 130 (1967) .......... 33

*Dombrowski v. Pfister*,
380 U.S. 479 (1965) .......... 44

*Dorfman v. Meiszner*,
430 F.2d 558 (7th Cir. 1970) .......... 32

*Ex parte Young*,
209 U.S. 123 (1908) .......... 43

*Fordyce v. City of Seattle*,
55 F.3d 436 (9th Cir. 1995) .......... 25, 26, 39

*Frisby v. Schultz*,
487 U.S. 474 (1988) .......... 37

*Frissell v. Rizzo*,
597 F.2d 840 (3rd Cir. 1979) .......... 22

*Garrison v. Louisiana*,
379 U.S. 64 (1964) .......... 33

*Globe Newspaper Co. v. Superior Court*,
457 U.S. 596 (1982) .......... 32

*Golden v. Zwickler*,
394 U.S. 103 (1969) ........ 6

*Goldhamer v. Nagode*,
621 F.3d 581 (7th Cir. 2010) ........ 3, 11

*Harper & Row, Publishers, Inc. v. Nation Enterprises*,
471 U.S. 539 (1985) ........ 20

*Harrisonville* v. *W. S. Dickey Clay Mfg. Co.*,
289 U.S. 334 (1933) ........ 46

*Heffron v. Int'l Soc. for Krishna Consciousness*,
452 U.S. 640 (1981) ........ 37

*Hill v. Colorado*,
530 U.S. 703 (2000) ........ 20

*Hodgkins v. Peterson*,
355 F.3d 1048 (7th Cir. 2004) ........ 35, 41

*Holder v. Humanitarian Law Project*,
130 S. Ct. 2705 (2010) ........ 8

*Houchins v. KQED*,
438 U.S. 1 (1978) ........ 30

*Iacobucci v. Boutler*,
193 F.3d 14 (1st Cir. 1999) ........ 31

*Ind. Right to Life, Inc. v. Shepard*,
507 F.3d 545 (7th Cir. 2007) ........ 20, 21

*Jean v. Massachusetts State Police*,
492 F.3d 24 (1st Cir. 2007) ........ 18

*Johnson v. Hawe*,
388 F.3d 676 (9th Cir. 2004) ........ 39

*Jones v. Gaydula*,
85-cv-1859, 1989 U.S. Dist. LEXIS 15419 (E.D. Penn. Dec. 22, 1989) ........ 21

*Katz v. United States*,
389 U.S. 347 (1967) ........ 20, 39

*Kelly v. Borough of Carlisle*,
622 F.3d 248 (3rd Cir. 2010) ........ 24

*Kleindienst v. Mandel*,
408 U.S. 753 (1972) ........ 20

*Larsen v. Fort Wayne Police Dept.*,
09-cv-55, 2010 U.S. Dist. LEXIS 57955 (N.D. Ind. June 11, 2010) ........ 23

*Lawson v. Hill*,
368 F.3d 955 (7th Cir. 2004) ........ 3

*Logan v. Wilkins*,
___ F.3d ___, 2011 U.S. App. LEXIS 13897 (7th Cir. July 8, 2011) ........ 6

*Los Angeles Police Dept. v. United Reporting Publishing Co.*,
528 U.S. 32 (1999) ........ 30

*Lovell v. Griffin*,
303 U.S. 444 (1938) ........ 28, 29

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ........ 4, 6, 7, 9

*Madsen v. Women's Health Center*,
512 U.S. 753 (1994) ........ 37

*Majors v. Bell*,
317 F.3d 719 (7th Cir. 2003) ........ 8

*Maryland v. Graber*,
12-K-10-0647, 2010 Md. Cir. Ct. LEXIS (Cir. Ct. Md. Sept. 27, 2010) ........ 39

*Massey v. Helman*,
196 F.3d 727 (7th Cir. 1999) ........ 9

*Matheny v. County of Alleghany*,
09-cv-1070, 2010 U.S. Dist. LEXIS 24189 (W.D. Pa. March 16, 2010) ........ 24

*McCormick v. City of Lawrence*,
130 Fed. Appx. 987 (10th Cir. 2005) ........................................ 24

*Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*,
128 F.3d 1111 (7th Cir. 1997) ........................................ 46

*Mills v. Alabama*,
384 U.S. 214 (1966) ........................................ 29

*Monitor Patriot Co. v. Roy*,
401 U.S. 265 (1971) ........................................ 33

*Munaf v. Geren*,
128 S. Ct. 2207 (2008) ........................................ 46

*Murdock v. Pennsylvania*,
319 U.S. 105 (1943) ........................................ 29

*Nat'l Cas. Co. v. McFatridge*,
604 F.3d 335 (7th Cir. 2010) ........................................ 15

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964) ........................................ 17, 33

*Nixon v. Warner Communications, Inc.*,
435 U.S. 589 (1978) ........................................ 29

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ........................................ 3, 11

*Olmstead v. United States*,
277 U.S. 438 (1928) ........................................ 20

*Pell v. Procunier*,
417 U.S. 817 (1974) ........................................ 29, 30

*Perry Education Assoc. v. Perry Local Educators' Assoc.*,
460 U.S. 37, 46 (1983) ........................................ 40, 43

*Potts v. City of Lafayette*,
121 F.3d 1106 (7th Cir. 1997) ........................................ 23, 31

*Press-Enterprise Co. v. Superior Court*,
478 U.S. 1 (1986)........................................................................................ 32

*Rice v. Kemper*,
374 F.3d 675 (8th Cir. 2004)........................................................................ 31

*Richmond Newspapers, Inc. v. Virginia*,
448 U.S. 555 (1980)..................................................................................... 32

*Robinson v. City of Chicago*,
868 F.2d 959 (7th Cir. 1989).......................................................................... 7

*Roe v. Wade*,
410 U.S. 113 (1973)..................................................................................... 43

*Schnell v. City of Chicago*,
407 F.2d 1084 (7th Cir. 1969)...................................................................... 28

*Sierra Club v. Morton*,
405 U.S. 727 (1972)....................................................................................... 9

*Singleton v. Wulff*,
428 U.S. 106 (1976)....................................................................................... 9

*St. John's United Church of Christ v. City of Chicago*,
502 F.3d 616 (7th Cir. 2007).......................................................................... 5

*Smith v. City of Cumming*,
212 F.3d 1332 (11th Cir. 2000)............................................................ 25, 26, 28

*Steffel v. Thompson*,
415 U.S. 452 (1974)..................................................................................... 43

*Summers v. Earth Island Institute*,
555 U.S. 488, 129 S. Ct. 1142 (2009)............................................................. 7

*Szymecki v. Houck*,
353 Fed. Appx. 852 (4th Cir. 2009) .............................................................. 25

*Thompson v. City of Clio*,
765 F. Supp. 1066 (M.D. Ala. 1991) ............................................................ 26

*Time, Inc. v. Hill*,
385 U.S. 374 (1967) ........ 33

*Toledo Newspaper Co. v. United States*,
247 U.S. 402 (1918) ........ 32

*Turner Broad. Sys. v. FCC*,
512 U.S. 622 (1994) ........ 20, 42

*Turner v. Rogers*,
___ U.S. ___, 2011 U.S. LEXIS 4566, *15 (June 20, 2011) ........ 6

*United States v. Kerley*,
753 F.2d 617 (7th Cir. 1985) ........ 32

*United States v. United States District Court*
407 U.S. 297 (1972) ........ 4, 17

*United States v. Yonkers*,
747 F.2d 111 (2d Cir. 1984) ........ 32

*Virginia State Bd. of Pharmacy v. Viriginia Citizens Consumer Council, Inc.*,
425 U.S. 748 (1976) ........ 20, 22

*Wallace v. Jaffree*,
472 U.S. 38 (1985) ........ 20

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989) ........ 35, 36

*Warth v. Seldin*,
422 U.S. 490 (1975) ........ 9

*Weinberger v. Romero-Barcelo*,
456 U.S. 305 (1982) ........ 46

*Westmoreland v. Columbia Broadcasting System, Inc.*,
752 F.2d 16 (2d Cir. 1984) ........ 32

*Whiteland Woods v. Township of West Whiteland*,
193 F.3d 177 (3rd Cir. 1999) ........ 31

*Winnetka v. Village of Winnetka*,
628 F.3d 937 (7th Cir. 2010) ........................................ 5

*Yakus* v. *United States*,
321 U.S. 414 (1944) ........................................ 46

*Younger v. Harris*,
401 U.S. 37 (1971) ........................................ 43, 44, 45

*Zemel v. Rusk*,
381 U.S. 1 (1965) ........................................ 29

Statutes

Ill. Const. Art. 1 §6 (1970) ........................................ 38

720 ILCS 5/14-1 (2011) ........................................ 2, 12

720 ILCS 5/14-2 (2011) ........................................ 2, 12, 37

720 ILCS 5/14-3 (2011) ........................................ 13, 21, 43

Md. Cts. & Jud. Proc. § 10-402(a)(1) ........................................ 39

18 Pa.C.S. § 5702 ........................................ 24

18 Pa.C.S. § 5703(1) ........................................ 24, 36

18 USCS § 2511(1)(c) ........................................ 36

Wash. Rev. Code § 9.73.030 ........................................ 26, 39

Other Authorities

11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, p 129
(2d ed. 1995) ........................................ 46

## JURISDICTIONAL STATEMENT

The Appellant's jurisdictional statement is complete and accurate.[1]

## STATEMENT OF THE ISSUES

I. Whether plaintiffs lack standing under Article III, §2 of the Constitution to seek injunctive or declaratory relief against the State's Attorney from prosecuting the Act as it applies to ACLU's police monitoring program.

II. Whether the district court correctly denied plaintiffs' leave to amend their complaint because plaintiffs do not have a First Amendment right to non-consensually audio-record police conversations.

## STATEMENT OF THE CASE

Plaintiff ACLU alleges that it intends to engage in a police monitoring program that collects the audio portions of on-duty police officers during police-civilian encounters (R. 1, ¶¶3, 14, and 16; R. 36-1, ¶¶3, 16, and 17) and that the Act, as applied, infringes on its First Amendment rights to gather, record, and publish the public conversations involving police-civilian encounters. (R. 1, ¶¶1, 9, and 10; R.36-1, ¶¶1, 11, and 12.) As a result, ACLU filed a complaint seeking declaratory and injunctive relief against Cook County State's Attorney Anita Alvarez (the "State's Attorney") in order to enjoin future prosecutions against ACLU in order to conduct its program. (*Id.*)

The district court dismissed ACLU's complaint. (R. 33.) ACLU filed a joint motion to alter or amend judgment and for leave to file an amended complaint. (R.

---

[1] Citations to documents contained within ACLU's appendix are designated (A. #). Citations to the District Court docket are cited by district court docket number and page number (R. #, page #).

35.)[2] The district court denied this motion on the grounds that "ACLU has not alleged a constitutional right or injury under the First Amendment. Rather, the ACLU proposes an unprecedented expansion of the First Amendment." (R. 42 at 9.)

ACLU filed a timely notice of appeal of the district court decisions granting the State's Attorney's motion to dismiss and denying ACLU's joint motion to alter or amend judgment and for leave to file an amended complaint.

## SUMMARY OF ARGUMENT

Under the Illinois Eavesdropping Act, 720 ILCS 5/14-1, *et seq*. (2011) (the "Act"), a person commits eavesdropping when he or she:

> [k]nowingly and intentionally uses an eavesdropping device for the purpose of hearing or recording all or any part of any conversation or intercepts, retains, or transcribes electronic communication unless he does so (A) with the consent of all of the parties to such conversation or electronic communication

720 ILCS 5/14-2(a)(1) (2011). Plaintiff American Civil Liberties Union of Illinois ("ACLU") argues that the First Amendment prohibits the State's Attorney from prosecuting persons who audio record conversations without the consent of all parties to the conversation. This argument is legally untenable, as the audio

2 ACLU sought leave to file an amended complaint that would have added Colleen Connell and Alison Carter as plaintiffs in this case. (R. 36.) Connell is the ACLU's Executive Director and Carter is ACLU's Senior Field Manager. (R.36-1, ¶3.) The district court did not allow ACLU to file its amended complaint on the grounds that in the Act did not violate the First Amendment by requiring that all parties consent to the audio recording of a conversation and, as a result, "[a]mendment would be futile." (R. 42, p. 9.)

recording of conversations without the consent of all participants does not violate the First Amendment.

For three reasons, this Court should affirm the decisions of the district court dismissing ACLU's complaint, denying ACLU's motion to alter or amend judgment and ACLU's motion for leave to file an amended complaint.

First, ACLU (and proposed plaintiffs Connell and Carter) do not have standing to bring a constitutional challenge against the Act. This Court has recognized that a party lacks standing to bring a facial challenge to a law that did not apply by its terms to the party's desired conduct. *Goldhamer v. Nagode*, 621 F.3d 581, 587 (7th Cir. 2010), citing *Lawson v. Hill*, 368 F.3d 955, 957 (7th Cir. 2004) (recognizing that a plaintiff cannot challenge a statute if the statute "fails to cover his conduct.") ACLU is not exposed to a threat of actual or imminent harm; but rather, ACLU's harm is conjectural and hypothetical because it assumes the conduct of its members and that of third party participants may result in criminal prosecution. However, many cases disfavor granting equitable relief against discretionary applications of criminal laws. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983); *Boyle v. Landry*, 401 U.S. 77, 78 (1971); *O'Shea v. Littleton*, 414 U.S. 488, 493 (1974); *Goldhamer*, 621 F.3d at 581.

ACLU does not demonstrate a credible threat of criminal prosecution because Alvarez' ability to prosecute does not necessarily establish a credible threat of

prosecution.[3] Even though ACLU relies on its own conduct as proof of a credible threat of prosecution, the real prosecuting decisions are outside of ACLU's prediction. Furthermore, ACLU's references to any ongoing prosecutions for violations of the Act are irrelevant because ACLU does not establish any nexus between those prosecutions and ACLU's fear of possible prosecution. This threat of injury is far too speculative to confer Article III standing, as ACLU cannot establish that it is under the threat of an actual or imminent injury in fact, which is: (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Second, in concentrating on its interests in receiving (via audio recording) the conversations of other persons, ACLU disregards the fact that the Act facilitates the free speech rights of the conversing parties. Federal courts have long recognized that electronic surveillance of conversations poses the threat of inhibiting private speech. *See, e.g., United States v. United States District Court*, 407 U.S. 297, 314 (1972) (recognizing that "private dissent, no less than open public discourse, is essential to our free society"). In prohibiting the audio recording of conversations where all participants have not consented to the recording, Illinois does not chill free speech but rather promotes such speech in furtherance of the policies underlying the First Amendment.

---

[3] ACLU's characterization of the Act as a "national outlier" as contained in its statement of facts (ACLU Br. at 6-7, n. 2) is a red-herring where the issue is only whether the Illinois Act violates the First Amendment, regardless of other states' legislative prerogatives.

Third, even if the Act restricts speech (which it does not), it is nonetheless a valid time, place, and manner restriction.

## ARGUMENT

### I. Standard of review.

The standard of review from the district court's grant of a Rule 12(b)(1) motion to dismiss is *de novo*, construing the complaint in the light most favorable to plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in its favor. *Winnetka v. Village of Winnetka*, 628 F.3d 937, 941 (7th Cir. 2010). A district court's denial or grant of a motion for leave to amend a complaint is reviewed under abuse of discretion. *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 875 (7th Cir. 2011). The Court will overturn a denial of a motion for leave to amend a complaint only if the district court abused its discretion by refusing to grant the leave without any justifying reason. *Id.*

In reviewing a ruling denying a motion for preliminary injunction as moot, this Court will review the district court's findings of fact for clear error, its balancing of the factors for a preliminary injunction under the abuse of discretion standard, and its legal conclusions *de novo*. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007).

### II. The district court correctly dismissed ACLU's claims for declaratory and injunctive relief.

While the district court dismissed the ACLU's complaint on the merits of its First Amendment claim, that decision may be affirmed on any basis supported by

the record. *See Logan v. Wilkins*, ___ F.3d ___, 2011 U.S. App. LEXIS 13897, *13 (7th Cir. July 8, 2011). This Court, for example, may affirm the dismissal of the ACLU's complaint on the basis that ACLU lacked Article III standing to bring its First Amendment challenge to the Act.

### A. ACLU and its members lack standing to bring claims for equitable relief against the State's Attorney.

Although ACLU, through its members, promises to non-consensually audio-record police-civilian encounters in an apparent violation of the Act, ACLU lacks standing to bring a First Amendment challenge to the Act. Unless a case or controversy is presented, no federal court has the jurisdiction to decide whether a federal, state, or local law is constitutional. *Golden v. Zwickler*, 394 U.S. 103, 110 (1969). Moreover, "an actual controversy must be extant at all stages of review." *Turner v. Rogers*, ___ U.S. ___, 2011 U.S. LEXIS 4566, *15 (June 20, 2011), *citing Alvarez v. Smith*, 130 S. Ct. 576, 580 (2009).

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A person seeking equitable relief needs to possess a sufficient personal stake in the outcome to seek prospective equitable relief. *Arreola v. Godinez*, 546 F.3d 788, 799 (7th Cir. 2008). In order to establish standing for injunctive or declaratory relief, ACLU must show that: (1) it is under threat of an actual or imminent injury in fact; (2) there is a causal relation between that injury and the challenged conduct; and (3) it is likely, rather than speculative or hypothetical, that a favorable judicial

decision will prevent or redress that injury. *Summers v. Earth Island Institute*, 555 U.S. 488, 129 S. Ct. 1142, 1149 (2009); *Robinson v. City of Chicago*, 868 F.2d 959, 966, n. 5 (7th Cir. 1989).

ACLU operates as a non-profit organization with 20,000 members and supporters, including officers, board members, employees, agents, and volunteers. (ACLU Br. at 8.) ACLU contends that its members or supporters will take to the streets to conduct surveillance of police officers where "(1) a police officer is performing their public duties; (2) the officer is in a public place; (3) the officer is speaking at a volume audible to the unassisted human ear; and (4) the person making the recording is acting in a manner that is otherwise lawful." (ACLU Br. at 9.) Yet, even with all of these individuals potentially participating in ACLU's planned surveillance, ACLU does not plausibly allege any cognizable injury in fact.

#### 1. ACLU cannot demonstrate an injury in fact.

ACLU cannot demonstrate an injury in fact. "The irreducible constitutional minimum of standing" requires an "injury in fact," which is an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Lujan*, 504 U.S. at 560. "The plaintiffs must demonstrate a 'personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (*quoting Baker v. Carr*, 369 U.S. 186, 204 (1962)). Abstract injury is not enough. *Id.* The plaintiff must show that he "has sustained or is immediately in

danger of sustaining some direct injury" as the result of the challenged official conduct and the injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical." *Id.* at 101-102. Generally, a person need not risk arrest before bringing a pre-enforcement challenge under the First Amendment. *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2717 (2010). However, in order to present a justiciable controversy, the person must assert more than a wholly speculative possibility of criminal consequences. *Babbit v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979).

In this case, ACLU must show that it has "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [that] there exists a credible threat of prosecution thereunder." *Id.* at 298. A plaintiff who mounts a pre-enforcement challenge to a statute that he claims violates his freedom of speech need not show that the authorities have expressly threatened to prosecute him; however, the statute must cover the conduct in which the plaintiff intends to engage. *Majors v. Bell*, 317 F.3d 719, 721 (7th Cir. 2003).

**a. ACLU cannot demonstrate a personal and concrete interest.**

Despite its inability to demonstrate a personal and concrete interest in the outcome of this lawsuit, ACLU asserts that it has Article III standing for its First Amendment claims. The Supreme Court has recognized:

> "when a person or entity seeks standing to advance the constitutional rights of others, we ask two questions." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624, n.3 (1989). First, has the litigant suffered some injury in fact sufficient to create a case or controversy in

> the Article III sense? And second, as a prudential matter, is the plaintiff the proper proponent of the particular legal rights he is asserting? *Id.*; *Singleton v. Wulff*, 428 U.S. 106, 112 (1976) (majority opinion). When a litigant attempts to assert the rights of a third party, "the standing question . . . is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

*Massey v. Helman*, 196 F.3d 727, 739 (7th Cir. 1999).

ACLU's advocacy under the guise of First Amendment infringement is truly an attempt to protect its special interest in police monitoring; however, ACLU's special interest in police monitoring does not convert this interest to a personal and concrete injury under the First Amendment. *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972). As applied, ACLU or its members do not have standing as a third-party special interest group to challenge the Act.

#### b. ACLU is not exposed to threat of actual or imminent harm, but merely conjectural or hypothetical injury.

ACLU's injury is not actual or imminent, but merely conjectural or hypothetical because: (i) the possible prosecution of ACLU or one of its members is unpredictable and (ii) the identities of the parties to the conversations that ACLU and its members want to audio record is wholly unknown. "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes -- that the injury is certainly impending." *Lujan,* 504 U.S. at 565, n. 2. "It has been stretched beyond the breaking point when the plaintiff alleges only an

injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control." *Id.* "There is certainly no reason in principle to demand evidence that third persons will take the action exposing the plaintiff to harm, while *presuming* that the plaintiff himself will do so." *Id.* "Where there is no actual harm, however, its imminence must be established." *Id.*

Courts have repeatedly refused to grant equitable relief prohibiting the discretionary enforcement of state statutes. In *Boyle v. Landry*, 401 U.S. 77, 78 (1971), the Court denied plaintiffs injunctive and declaratory relief against, *inter alia*, the Cook County State's Attorney from enforcing the Illinois intimidation statute against African-American residents in Chicago despite plaintiffs' allegations that the statute infringed on the plaintiffs' First Amendment rights. The Court held that plaintiffs' allegations "fall far short of showing any irreparable injury from threats or actual prosecutions under the intimidation statute or from any other conduct by state or city officials" where the plaintiffs did not assert: (a) that a single plaintiff had ever been prosecuted, charged, or even arrested under the particular intimidation statute or (b) that any officer or official threatened to arrest or prosecute any one or more of the plaintiffs under that statute. *Id.* The Court reasoned that the allegations did not sufficiently demonstrate that any of the plaintiffs who brought the lawsuit were in any jeopardy of suffering irreparable injury if the State is left to prosecute in the normal manner. *Id.* Accordingly, the Court held that allegations such as these "amount to nothing more than

speculation about the future" and federal courts should refrain from interference. *Id.*

Subsequent cases demonstrate that the type of speculative claim that ACLU has advanced does not confer Article III standing for its proposed First Amendment claims. *See O'Shea v. Littleton*, 414 U.S. 488, 493 (1974) (denying standing on the basis that too many variables existed before a plaintiff could be exposed to an actual or imminent harm); *Lyons*, 461 U.S. at 111 (holding that that equitable relief against the use of chokeholds is "unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat"); *Goldhamer*, 621 F.3d at 581 (holding that the plaintiffs lacked standing to enjoin enforcement of the City of Chicago's failure-to-disperse ordinance because the facts surrounding the plaintiffs' arrest did not support a credible threat of prosecution in the future). Implicit in *Boyle*, *O'Shea*, *Lyons*, and *Goldhamer* is that courts should not grant equitable relief to a plaintiff against discretionary acts of law enforcement officials. In other words, injuctive or declaratory relief is not appropriate because actual injury to a plaintiff is too speculative where the enforcement of a law is applicable or not applicable depending on the particularized nature of the actor's future conduct.

Here, the alleged injury and the alleged police misconduct are purely speculative and hypothetical. ACLU, in this regard, alleges not only abstract injury but also abstract government misconduct. Such vague allegations do not confer Article III standing for a First Amendment challenge to enforcement of a state law.

### c. ACLU does not demonstrate an actual injury through a credible threat of prosecution.

ACLU cannot demonstrate an actual injury through a credible threat of prosecution based on its intent to engage in its proposed police monitoring program. In order to establish a credible threat of prosecution, ACLU necessary submits that its program will plausibly: (1) use an eavesdropping device to intercept or record a conversation of a police and civilian encounter in violation of 720 ILCS 5/14-2 (2011); [4] (2) in a manner not exempted pursuant to Section 14-3 of the Act; and (3) without the consent of the individuals recorded.

Despite ACLU's declared intention to violate the Act, ACLU cannot alleviate the countless uncertainties which diminish a credible threat of prosecution. These unknown variables range from any date certain of when ACLU will implement its program to the unpredictability of finding appropriate subjects targeted by its program. In sum, ACLU seeks equitable protection against an injury which is inherently unpredictable. ACLU's inability to control these unforeseeable forces makes any injury too speculative and hypothetical.

---

[4] The Act states in relevant part, "(a) a person commits eavesdropping when he (1) knowingly and intentionally uses an eavesdropping device for the purpose of hearing or recording all or any part of any conversation or intercepts, retains, or transcribes electronic communication unless he does so (A) with the consent of all of the parties to such conversation or electronic communication." 720 ILCS 5/14-2(a)(1)(A) (2011). Moreover, the term conversation is defined as "any oral communication between 2 or more persons regardless of whether one or more of the parties intended their communication to be of a private nature under circumstances justifying that expectation." 720 ILCS 5/14-1(d) (2011).

For example, ACLU seeks equitable relief to protect the audio-recording of expressive conduct, including spontaneous conduct, despite the fact that the dates of such expressive conduct are inherently uncertain. Specifically, ACLU asserts that it will implement the ACLU program at pre-planned events; yet, it also alleges that it wishes to enjoin prosecutions for those random "spontaneous expressive events" between police officers and civilians. (R. 36, Ex. 1, ¶ 17.) By asserting an injury to "spontaneous expressive" conduct, ACLU concedes speculative, not actual or imminent, injury. ACLU cannot plausibly guarantee it will ever observe a police and citizen encounter at any point in time, let alone a confrontation involving police misconduct. Also, although ACLU alleges that its program is designated to record non-consensual encounters, ACLU cannot predict that on any given occasion, the parties to the recorded conversation will not provide consent. *See Lyons*, 461 U.S. at 107-108.

Moreover, ACLU cannot guarantee with any certainty that its members' recordings will fall outside of the enumerated exemptions under Section 14-3 of the Act. For example, ACLU's members may encounter criminal conduct to themselves or a member of their households where audio-recording does not violate the Act. *See, e.g.,* 720 ILCS 5/14-3(i) (2010).[5]

[5] The Act exempts an audio recording of a conversation where the recording party reasonably suspects that another party to the conversation "is about to commit, or has committed a criminal offense against the person or a member of his or her immediate household, and there is reason to believe that evidence of the criminal offense may be obtained by the recording." 720 ILCS 5/14-3(i) (2011).

ACLU alleges that because the State's Attorney has the *ability* to prosecute under various theories of solicitation, accountability, and/or violation of the Act, there is a credible *threat* of prosecution. (R. 36, Ex. 1, ¶ 25.) Yet, ACLU does not allege that any of its members have ever been arrested, accused, charged, prosecuted, or threatened with prosecution for its anticipated violations of the Act. ACLU does not present any memoranda, general orders, or affidavits from law enforcement personnel that designate a policy for investigating, arresting, and charging participants in programs similar to that of ACLU. In fact, ACLU cannot, except through pure speculation, assert that a victim of any illegal surreptitious recording will sign a criminal complaint against the person audio recording them.

ACLU refers to two examples of ongoing prosecutions in Cook County;[6] however, ACLU does not allege that those individual defendants are members of the ACLU. Moreover, ACLU certainly does not demonstrate that the facts of those pending prosecutions are sufficiently similar to the facts of the ACLU program in

---

[6] In support of its credible threat of prosecution, Plaintiff alleges that the State's Attorney is currently prosecuting two other individuals in *People v. Christopher Drew*, 10-cr-46 ("Drew") and *People v. Tiawanda Moore*, 10-cr-1570901 ("Moore"), for violation of the Act. (R. 36, Ex. 1, ¶ 39(a), (b); Ex. A; Ex. B.) ACLU further submits the affidavits of putative plaintiffs, Connell and Carter, who express their respective fears of prosecution. (*Id.*, Ex. 2, ¶ 18(c); Ex. 3, ¶ 18(c).) ACLU also avers that its members have monitored police without audio recording due to fear of prosecution. (*Id.*, Ex. 1, ¶ 22.)

order to create a reasonable threat of prosecution.[7] ACLU further asserts that other State's Attorneys throughout Illinois are prosecuting violations of the Act. ACLU claims that this fact poses a credible threat that ACLU, Connell, and Carter will be prosecuted. Obviously, ACLU's reliance on these other prosecutions is again irrelevant. The various elected State's Attorneys throughout Illinois are autonomous officials who carry out their prescribed duties independently of each other. *See Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 341 (7th Cir. 2010) (where the court reasoned that the best characterization of the state's attorney is that he is a state constitutional official with jurisdiction in the county in which he is elected). State's Attorney Alvarez cannot be held accountable for prosecutions conducted by other Illinois State's Attorneys.

Therefore, ACLU cannot establish any credible threat of prosecution for the discretionary enforcement of laws without significant speculation.

## III. ACLU does not allege a cognizable First Amendment claim.

### A. The ACLU program is not protected by the First Amendment.

Despite their assertions to the contrary, ACLU does not have a right to audio-record police-civilian encounters in public places in order to further its First Amendment rights, *i.e.*, the right to receive and gather speech, the right to publish

---

[7] Initially, Drew's indictment contains no facts from which it can be compared to ACLU's situation. (R. 36, Ex. A.) Additionally, Moore allegedly attempted to surreptitiously record a conversation with a police officer interviewing Moore while at a police station (*Id.*, Ex. B.), whereas ACLU intends to conduct its program in public, not at a police station. Moore's prosecution provides no parallel to ACLU's program. (*Id.*, Ex. 1, ¶ 3.)

and disseminate information, and the right to redress grievances. (R. 1, ¶ 9.) In support of its position, ACLU artfully conflates and misapplies several constitutional concepts in an effort to convert the speech rights occurring within a police-citizen encounter into ACLU's own protected right to record such encounter. ACLU then alleges that the Act impairs that contrived right. (*See* ACLU Br. *generally*.) For the following reasons, ACLU does not have a constitutional right to audio-record police-citizen encounters.

**1. The Act does not violate ACLU's First Amendment rights.**

The Act does not violate ACLU's speech rights where ACLU intends to non-consensually audio-record police-civilian encounters in a public location. Although ACLU does not allege that the Act violates its freedom of speech, ACLU asserts that the Act prevents a right to receive and gather speech, and ultimately, infringes ACLU's effective reporting on police-civilian encounters. ACLU's allegations raise several First Amendment concepts that must be viewed in their proper context. Here, the Act does not violate freedom of speech or the right to receive speech.

**a. If anything, the Act promotes robust and uninhibited speech.**

In its complaint, ACLU claims that the First Amendment prohibits Illinois from prohibiting person from audio recording police officers without their consent. (R. 1, ¶ 4.) But in "seeking a declaration that such conduct is constitutionally protected," ALCU effectively asks this Court to declare that the First Amendment prohibits Illinois from prosecuting persons for audio recording any person without

their consent. In other words, in ACLU's view, the First Amendment prohibits states from outlawing private surveillance. It does not. Case law reveals that, if anything, surveillance runs counter to the principles of the First Amendment.

It is axiomatic that under the First Amendment, "debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). Eight years later, in *United States v. United States District Court*, 407 U.S. 297 (1972), the Supreme Court opined that that unchecked governmental surveillance would chill the same kind of free and uninhibited speech:

> The price of lawful public dissent must not be a dread of subjection to an unchecked surveillance power. Nor must the fear of unauthorized official eavesdropping deter vigorous citizen dissent and discussion of Government action in private conversation. For private dissent, no less than open public discourse, is essential to our free society.

*Id.* at 314.

The Act considers a different but related topic: private surveillance. Aside from its express exemptions, the Act generally prohibits persons from audio recording conversations with other parties without their consent. In so doing, the Act promotes speech because it gives speakers peace of mind that their words are not being recorded for the benefit of other potential listeners not of their choosing.

In this regard, Illinois has made the policy choice to promote robust, private discourse by requiring participants in conversations to obtain consent from all speakers before audio recording such conversations. The First Amendment surely does not countermand this public policy.

### b. The interception of matters of public concern is not protected under the First Amendment.

The Supreme Court has declined to afford First Amendment protection to the electronic interception of matters of public concern. In *Bartnicki v. Vopper*, 532 U.S. 514, 535 (2001), the Court held that even though the First Amendment does protect a right to publish illegally intercepted communications of a public concern, the Court did not afford First Amendment protection to the predicate audio-recorded interception of said communication. *See Jean v. Massachusetts State Police*, 492 F.3d 24 (1st Cir. 2007) (during a warrantless search of a home deemed a matter of public concern, the First Amendment protects the subsequent publication, not the underlying illegal interception, of the communications of police officers in Massachusetts); *cf. Boehner v. McDermott*, 484 F.3d 573, 581 (D.C. Cir. 2007) (the First Amendment does not apply to congressional member's subsequent publication of illegally intercepted communication). If *Bartnicki* intended the First Amendment to apply to the *interception* of public officials' communications and matters of public concern, the Court would have applied the First Amendment to shield this antecedent interception from illegality without reaching the merits of the freedom to publish. In other words, *Bartnicki* supports the idea that state statutes can criminalize the interception of public figures' non-consensual speech concerning a public or newsworthy matter without consequence to the First Amendment.

As stated in *Bartnicki*, ACLU is not protected by the First Amendment where it illegally intercepts police-civilian encounters. This result is further appropriate

because ACLU does not have any constitutional interests, other than vicariously, in the conversations of third-party encounters. ACLU is not entitled First Amendment protection to adopt speech of others in this manner in order to facilitate its own potential speech.

### 2. ACLU improperly asserts a right to receive police-civilian encounters.

In this matter, ACLU contends that the Act, as applied to its program, infringes its right to receive police-citizen encounters and ultimately thwarts ACLU's primary purpose of disseminating its audio-recorded findings of its police monitoring program. (R. 1, ¶¶ 9-11.) ACLU is not entitled to a right to receive under this scenario. The right to receive is available only if a willing speaker's right to speech is infringed by some regulation. In other words, if a willing speaker is prevented from engaging in speech, the speaker's speech rights derive to that speaker's audience as a right to receive what otherwise would have been expressed but for regulation. However, as stated, prior to reaching whether ACLU has a right to receive, ACLU must demonstrate the existence of willing speakers -- by the very nature of its lawsuit, ACLU has not.

#### a. No right to receive without alleging all speakers are willing speakers.

Contrary to ACLU's position, the First Amendment does not protect non-consensual audio-recordings. In fact, the Act's prohibition against the interception of most conversations without consent is a concept firmly rooted in the First Amendment's protection of the right to speak, right to not speak, or right to choose

one's listeners. *Wallace v. Jaffree*, 472 U.S. 38, 51 (1985); *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 559 (1985). "At the heart of the First Amendment lies the principle that each person should decide for him or herself the ideas and beliefs deserving of expression, consideration, and adherence." *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 641 (1994). "Freedom of speech presupposes a willing speaker." *Virginia State Bd. of Pharmacy v. Viriginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976). If a willing speaker exists, the freedom of speech protection is afforded "to the communication, to its source and to its recipients both." *Id.*; *see Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972).

A right to receive information "is an inherent corollary of the rights of free speech and press that are explicitly guaranteed by the Constitution" because "the right to receive ideas follows ineluctably from the *sender's* First Amendment right to send them." *Bd. of Educ., Island Trees Union Free Sch. Dist Number 26 v. Pico*, 457 U.S. 853, 867 (1982) (emphasis original). Yet, a person may preserve speech as private even in an area accessible to the public. *Katz v. United States*, 389 U.S. 347, 351 (1967). Citizens have a broad right to be let alone and it is "the most comprehensive of rights and the right most valued by civilized men." *Hill v. Colorado*, 530 U.S. 703, 716 (2000) (*quoting Olmstead v. United States*, 277 U.S. 438, 478 (1928)).

A plaintiff has standing to assert a First Amendment right to receive if only the plaintiff can demonstrate that this speech derives from a willing speaker. *Ind.*

*Right to Life, Inc. v. Shepard*, 507 F.3d 545, 549 (7th Cir. 2007). Under Article III standing requirements, "[w]hether the injury is phrased as a deprivation of information that the listener would find useful or the interference with a relationship between speaker and listener, a government regulation cannot cause that injury unless petitioners can identify a willing speaker." *Competitive Enterprise Institute v. U.S. Dep't of Transp.*, 856 F.2d 1563, 1566 (D.C. Cir. 1988). "Imagining the existence of a willing speaker runs contrary to the Supreme Court's command that injuries-in-fact must be 'actual or imminent, not conjectural or hypothetical.'" *Bond v. Utreras*, 585 F.3d 1061, 1078 (7th Cir. 2009); *see Jones v. Gaydula*, 85-cv-1859, 1989 U.S. Dist. LEXIS 15419, at * 6 (E.D. Penn. Dec. 22, 1989) (no First Amendment right to tape record the statements of an unwilling utterant).

ACLU's program inherently seeks to eliminate the "willing speaker" requirement through its intention to receive the speech of a police officer and/or civilian *without* his or her consent, and in turn, elevate the right to receive above the right to willingly speak. However, the right to willingly speak is superior to the right to receive, and the derivative right to receive is triggered only after the speaker voluntarily assents to participate in a conversation. The Act, in a sense, codifies the willing speaker requirement by mandating that consent be obtained in order to audio-record conversations.[8]

[8] *See* 725 ILCS 5/14-3 (2011) (providing exemptions to the consent requirement).

**b. The Act does not regulate willing speakers.**

ACLU does not show that the Act imposes a restriction on willing speakers, which is a precondition to a listener asserting a right to receive. Furthermore, ACLU cannot seek redress for an infringement of its right to receive information without also establishing the existence of a *regulation* imposed on a willing speaker. *Virginia State Bd. of Pharmacy*, 425 U.S. at 756; *see Basiardanes v. Galveston*, 682 F.2d 1203, 1211 (5th Cir. 1982). Recipients of protected speech have standing to challenge the restrictions on speech only if the speaker himself is precluded from making the challenge. *Frissell v. Rizzo*, 597 F.2d 840, 848 (3rd Cir. 1979). In other words, unless a speaker is restricted by law from speaking, a right to receive is non-existent.

In this case, ACLU does not allege that police officers or civilians are subject to any speech restriction and that they are precluded from making a challenge to such a restriction -- both of which are necessary in order for ACLU to seek relief under the "right to receive." Instead, ACLU has extracted the concept of "right to receive" without regard to the context such a right may be asserted, *i.e.*, ACLU can only have a right to receive where a willing speaker is limited by a regulation. Because ACLU does not demonstrate that a speaker's right to speech is regulated, ACLU lacks standing for a cognizable right to receive.

### c. The right to receive does not include the right to audio-record.

Assuming, *arguendo*, that ACLU can demonstrate that the Act regulates a willing speaker, ACLU seeks to incorporate a right to audio-record into the right to receive. This extension of the right to receive through audio-recording has never been acknowledged by this Court. In fact, in *Potts v. City of Lafayette*, 121 F.3d 1106, 1111 (7th Cir. 1997), this Court held that there is no right to record at a public event. In *Potts*, this Court upheld the City of Lafayette's prohibition on the plaintiff bringing in his tape recorder to a Ku Klux Klan rally without valid media credentials reasoning that "there is nothing in the Constitution which guarantees the right to record a public event." *Id.* at 1109-11. Thus, even at a public gathering, where the speaker undeniably has no expectation of privacy regarding the dissemination of his utterances, there is no right to record such an event. *See Larsen v. Fort Wayne Police Dept.*, 09-cv-55, 2010 U.S. Dist. LEXIS 57955, at * 40-41 (N.D. Ind. June 11, 2010) (restriction against videotaping did not "meaningfully interfere" with spectator's ability to inform oneself about the event because the spectator could gather information by other means, including non-flash photography).

In this case, ACLU's program is further removed from the decision in *Potts* where if ACLU was the plaintiff in *Potts*, it would not seek to record the willing actors at the KKK rally; but in fact go on to assert a constitutional right to surreptitiously record those police and by-standers present. Surely, if *Potts* stated

that there is no right to record the willing speakers at a rally, then it only stands to reason that there is no right to record unwilling citizens and police officers at such an event.

#### d. No established right to audio-record police officers exists.

Contrary to ACLU's argument (ACLU Br. at 19), no other circuit has unequivocally acknowledged a right to *audio-record* a police officer exists under the First Amendment. Recently, the Third Circuit declined to find that the right to videotape police officers during traffic stops was clearly established in *Kelly v. Borough of Carlisle*, 622 F.3d 248 (3rd Cir. 2010). In *Kelly*, the plaintiff was arrested for violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("Wiretap Act")[9] while video recording his own traffic stop. *Id.* at 263. *See Matheny v. County of Alleghany*, 09-cv-1070, 2010 U.S. Dist. LEXIS 24189, at *14 (W.D. Pa. March 16, 2010) (concluding that the Third Circuit has not expounded on the notion of whether any First Amendment right to videotape, with or without audio, or photograph the police); *Banks v. Gallagher*, 08-cv-1110, 2010 U.S. Dist. LEXIS 55308, at * 35 (M.D. Penn. Mar. 18, 2010) (holding no clearly established right to videotape police conduct). See also *McCormick v. City of Lawrence*, 130 Fed. Appx. 987, 988 (10th Cir. 2005) (subsequent destruction of audio and video tapes of

[9] The Wiretap Act criminalizes a person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic, or oral communication." 18 Pa.C.S. § 5703(1). Moreover, oral communication is defined as "[a]ny oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 Pa.C.S. § 5702.

police conduct was not a clearly established First Amendment violation); *Szymecki v. Houck*, 353 Fed. Appx. 852 (4th Cir. 2009) (right to record police activities on public property not clearly established).

Moreover, it is highly unlikely that such a right would ever be acknowledged because of the imperative need to allow police officers to maintain control of all encounters. *See Arizona v. Johnson*, 129 S. Ct. 781, 786 (2009) (traffic stops are "especially fraught with danger to police officers" where the risk of harm is minimized "if the officers routinely exercised unquestioned command of the situation").[10]

The State's Attorney acknowledges that in *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000), the Eleventh Circuit did recognize a First Amendment right to photograph or videotape police conduct subject to reasonable time, place, and manner restrictions, but *Smith* did not address audio-recording. Nevertheless, the holding in *Smith* is predicated, in part, on a misapplication of the Ninth Circuit's holding in *Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995)

---

10 *See also Colten v. Kentucky*, 407 U.S. 104, 109 (1972) (disorderly conduct ordinance did not violate an individual's First Amendment rights where individual interfered with an officer conducting his official duties at a traffic stop).

because, in fact, a closer reading of *Fordyce* actually yields the opposite conclusion ascribed by *Smith*.[11]

In *Fordyce*, the plaintiff sued the municipality for arresting him under the Washington privacy statute for videotaping some bystanders during a protest march.[12] At 438. In reversing the district court's grant of summary judgment as to plaintiff's First Amendment claim of news gathering and assault, the court held that a genuine issue of fact existed as to whether the plaintiff was assaulted in "an attempt to prevent or dissuade him from exercising his First Amendment right to film matters of public interest" without clearly reaching the issue of whether such conduct was in fact a clearly established First Amendment right. *Id.* at 439. More importantly, the remainder of the *Fordyce* decision affirming that the defendant officers were entitled to qualified immunity for arresting plaintiff necessarily holds that the right to videotape was not a clearly established constitutional right. This is true because if the right to videotape was in fact clearly established, the officers would not have been protected by qualified immunity in arresting plaintiff for a

[11] Moreover, in *Thompson v. City of Clio*, 765 F. Supp. 1066, 1070 (M.D. Ala. 1991), another case relied on by *Smith*, the district court's analysis was based in large part on the fact that the city always permitted tape-recording during open municipal meetings, but banned plaintiff from tape-recording for perceived misuse of these recordings.

[12] "Except as otherwise provided in this chapter, it shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, or record any…(b) private conversation, by any device electronic…without first obtaining the consent of all the persons engaged in the conversation." Wash. Rev. Code § 9.73.030(1).

violation of the privacy act. *See id.* at 439-40; *see also Adkins v. Guam Police Dept.*, 09-00029, 2010 U.S. Dist. LEXIS 87353, at *34-36 (D. Guam. Aug. 24, 2010) ("While a few courts have held that a citizen has a First Amendment right to take such photographs, subject to reasonable time, place, and manner restrictions, such a right has not been determined by the Ninth Circuit.").

Although the other circuits have spoken on what, if any, protection photography and video-recording are afforded under the First Amendment, no decision has been rendered precisely on point with the question of surreptitious audio-recording of police-civilian encounters.

#### e. Video-recording and photographing are qualitatively different from audio-recording.

The State's Attorney would be remiss without highlighting that video-recording and photographing are drastically different forms of media from that of audio-recording. Video-recording and photographing capture one's physical appearance which, in a public place is, by nature, public. However, a person's words in a conversation in public location could be expected to remain private. Audio-recording threatens to memorialize those spoken words regardless of this expectation of privacy. Moreover, audio-recording conversations can immortalize statements, including misstatements, in ways that merely capturing an image does not. There can be no question that audio-recording is a far greater intrusion into personal privacy than video-recording or photographing.

In support of its argument that the First Amendment encompasses the right to audio-record police, ACLU relies on one case which supports the right to videotape police conduct. (*See* ACLU Br. at 19) (citing *Smith v. City of Cumming*, 212 F.3d at 1333). However, *Smith* provides scant analysis which could pertain to the facts of ACLU's proposed program. More importantly, *Smith* does not articulate a right to audio-record.

ACLU also includes *Schnell v. City of Chicago*, 407 F.2d 1084, 1086 (7th Cir. 1969) to support a right to photography where this Court enjoined police harassment of news photographers covering the 1968 Democratic National Convention in Chicago. Again, this case applies to the right to gather images at a political event, without addressing a right to audio-record.

As explained, the qualitative difference of audio-recording versus photographing and video-recording are substantial, and as such, those cases that ACLU cites (ACLU Br. at 19-20, n. 6-14) offer nominal support, if any, for extending First Amendment protection to non-consensual audio-recording police-civilian encounters.

### B. ACLU has not established that the Act affects its freedom of press.

ACLU further alleges that the Act prohibits its right to gather and publish under the Free Press clause of the First Amendment. The State's Attorney readily acknowledges that freedom of the press is a "fundamental personal right" which "is not confined to newspapers and periodicals." *Lovell v. Griffin*, 303 U.S. 444, 450

(1938). "It necessarily embraces pamphlets and leaflets [and]…the press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion." *Id.*; *see also Mills v. Alabama*, 384 U.S. 214, 219 (1966); *Murdock v. Pennsylvania*, 319 U.S. 105, 111 (1943). However, the Act applies uniformly to press and the general public, and therefore, ACLU's freedom of press is not infringed.

#### 1. Freedom of press does not confer a special right of access.

Assuming that ACLU and its members are press, the Act does not deny it any access greater than the general public. The press serves as the information-gathering agent of the public, and it cannot be prevented from reporting what it learned and what the public was entitled to know. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 609 (1978). The First Amendment generally grants the press no right to information superior to that of the general public. *Id.* "The right to speak and publish does not carry with it an unrestrained right to gather information." *Zemel v. Rusk*, 381 U.S. 1, 17 (1965) (no First Amendment right involved where the Secretary of State prohibited travel to Cuba because there are "few restrictions on action which could not be clothed by ingenious argument in the garb of decreased data flow").

As a member of the press, ACLU seeks a special right of access superior to other citizens. However, the Constitution does not require government to afford the press special access to information not shared by members of the public. *Pell v.*

*Procunier*, 417 U.S. 817, 833 (1974). Moreover, the Constitution does not impose on government the affirmative duty to make sources of information available to journalists which are not available to members of the public generally. *Id.* at 834-35. The Court has never afforded a special privilege of access to the press of news sources as distinguished from a right to publish information which has been obtained. *Houchins v. KQED*, 438 U.S. 1, 10 (1978) (media does not have a special right of access to jail different from or greater than that accorded to the public generally). "There is an undoubted right to gather news 'from any source by means within the law,' but that affords no basis for the claim that the First Amendment compels others – private persons or governments – to supply information." *Id.* at 11; (quoting *Branzburg v. Hayes*, 408 U.S. 665, 684-85 (1972)). ACLU is not entitled to compel police officers or citizens to speak at all; therefore, it goes without saying that the Act's qualifications are not unconstitutional. *Los Angeles Police Dept. v. United Reporting Publishing Co.*, 528 U.S. 32, 40 (1999) (no First Amendment violation for California's qualifications on access to arrestees' backgrounds).

The Act prevents the press from audio-recording conversations without the consent of all parties -- a restriction identical to the general public. Moreover, ACLU and its members will retain all of its traditional journalistic tools but for the exception of audio-recording. Therefore, the Act does not prohibit the freedom of the press.

### 2. ACLU's right to gather information in public is not unlimited.

ACLU contends that the right to gather applies to non-consensual audio recordings of citizen-police encounters. However, the right to gather is not unlimited and limiting ACLU's ability to audio-record is consistent with such precedent. In fact, the press has long had certain restraints placed on its access to information and it has been held repeatedly that these restrictions, including recording public events, do not run afoul of the First Amendment.

Initially, some press restraints include those placed on recording public meetings where, as stated in *Potts*, there is no right to videotape public meetings. 121 F.3d at 1111; *see also Rice v. Kemper*, 374 F.3d 675, 678 (8th Cir. 2004) (neither the public nor the media has a First Amendment right to videotape, photograph, or make audio recordings of government proceedings that are by law open to the public); *Whiteland Woods v. Township of West Whiteland*, 193 F.3d 177, 183 (3rd Cir. 1999) (holding that no right to videotape a town hall meeting because the First Amendment does not require states "to accommodate every potential method of recording its proceedings, particularly where the public is granted alternative means of compiling a comprehensive record"); *cf. Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir. 1994) (restrictions on recording open meetings are subject to time, place, and manner restrictions); *but cf. Iacobucci v. Boutler*, 193 F.3d 14, 24 (1st Cir. 1999) (denying an officer qualified immunity where the officer should not have arrested the plaintiff in violation of the disorderly conduct ordinance for video

recording a public meeting because the Massachusetts Open Meetings Law specifically contemplates video recording).

Similarly, the press has a right to attend public trials and criminal proceedings,[13] although its ability to record can be restricted. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580-81, n.18 (1980). "It suffices to say that, however complete is the right of the press to state public things and discuss them, that right, as every other right enjoyed in human society, is subject to the restraints which separate right from wrong-doing." *Toledo Newspaper Co. v. United States*, 247 U.S. 402, 419-420 (1918); *United States v. Kerley*, 753 F.2d 617, 621 (7th Cir. 1985) (holding that the public does not have a right to videotape trial even when the defendant wishes it to be videotaped); *Westmoreland v. Columbia Broadcasting System, Inc.*, 752 F.2d 16, 23 (2d Cir. 1984) (same).[14]

The press is also subject to restrictions on what it may publish. "Although the press may deter or regulate what is said or published, the press may not circulate knowing or reckless falsehoods damaging to private reputation without subjecting itself to liability for damages, including punitive damages, or even criminal

---

[13] *See also Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 10 (1986) (open preliminary hearings); *cf. Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982) (mandatory closure of court from press in sexual abuse cases unconstitutional).

[14] *See Dorfman v. Meiszner*, 430 F.2d 558, 561 (7th Cir. 1970) (restriction against all photography and broadcasting from all areas of courthouse invalid); *United States v. Yonkers*, 747 F.2d 111, 114 (2d Cir. 1984) (prohibition from tape recording trial subject to time, place, and manner restriction).

prosecution. *Branzburg*, 408 U.S. at 683-84 (*citing New York Times*, 376 U.S. at 279-80).[15]

Moreover, the press is not immune to criminal laws. "Despite the fact that news gathering may be hampered, the press is regularly excluded from grand jury proceedings, [judicial] conferences, the meetings of other official bodies gathered in executive session, and the meetings of private organizations." *Id.* at 684. "Newsmen have no constitutional right of access to the scenes of crime or disaster when the general public is excluded, and they may be prohibited from attending or publishing information about trials if such restrictions are necessary to assure a defendant a fair trial before an impartial tribunal." Id. at 684-85.

The Supreme Court held that the public interest in law enforcement and in ensuring effective grand jury proceedings is sufficient to override the burden on news gathering that is said to result from insisting that reporters, like other citizens, respond to relevant questions put to them in the course of a valid grand jury or criminal trial. *Id.* at 690. "It would be frivolous to assert… that the First Amendment, in the interest of securing news or otherwise, confers a license on either the reporter or his news sources to violate valid criminal laws. *Id.* at 691. "Although stealing documents or private wiretapping could provide newsworthy information, neither reporter nor source is immune from conviction for such conduct, whatever the impact on the flow of news." *Id.* "The Amendment does not

---

[15] *See Garrison v. Louisiana*, 379 U.S. 64, 74 (1964); *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 147 (1967); *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 277 (1971); and *Time, Inc. v. Hill*, 385 U.S. 374 (1967).

reach so far as to override the interest of the public in ensuring that neither reporter or source is invading the rights of other citizens through reprehensible conduct forbidden to all other persons." *Id.* at 691-692; *see Craig v. Harney*, 331 U.S. 367, 377-78 (1947) (a newspaper or journalist may also be punished for contempt of court).

Assuming, *arguendo*, the ACLU's program concerns ACLU's (and its members') freedom of press, ACLU is not afforded any greater rights of access to information than that of the general public, including the right to audio-record police-civilian encounters. Based on the above historical restrictions, it stands to reason ACLU's right to gather would not apply to non-consensual audio-recording of police because of the importance in affording police officers discretion to engage in official actions ranging from law enforcement investigations to providing safety for individual citizens and the general public.

### C. ACLU does not have a right to petition government for redress on behalf of third parties.

In its brief, ACLU alludes to the Act's infringement of its right to petition government for the redress of grievances (ACLU Br. at 41-44); however, any right to petition for redress of grievances is wholly speculative. In order to establish the denial of this right, ACLU assumes that its members' encounters with the police will result in redressable causes of action regarding the conduct of the targeted police officers. ACLU's speculative allegations presume that all encounters will be confrontational and that its members are facing imminent threat of misconduct by

officers. These hypothetical allegations are insufficient to establish the required injury necessary to establish standing. *See Lyons*, 461 U.S. at 101-102.

Moreover, unless ACLU anticipates every incident of police misconduct will include injury to itself or its members, ACLU cannot assert third-party standing to redress the grievances of those non- ACLU individuals harmed because ACLU lacks a personal stake as stated *supra* in Part I. *Arreola*, 546 F.3d at 799.

## IV. Even if the Act restricts speech, it is a valid time, place, and manner restriction.

### A. The Act does not place restrictions based on content.

The Act, as it restricts ACLU from audio-recording police officers, is not a content-based speech restriction. *See Bartnicki*, 532 U.S. at 526. In other words, although ACLU's program of recording police-civilian encounters is not constitutionally protected conduct, even if it was, such a restriction is of general applicability that incidentally burdens speech in a content-neutral fashion.

Assuming, *arguendo*, the Act is a content-neutral time, place, or manner restriction that is narrowly tailored for legitimate interests allowing for ample alternative channels for expression. *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989) (regulation need not be the least restrictive or least intrusive means of doing so); *Hodgkins v. Peterson*, 355 F.3d 1048, 1059 (7th Cir. 2004) (same).

#### 1. The Act is content-neutral.

The Act precludes the non-consensual audio-recording of most conversations, regardless of the subject or viewpoint of the conversations which is being recorded.

"The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward*, 491 U.S. at 791 (1989). "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id.* "Government regulation of expressive activity is content neutral so long as it is '*justified* without reference to the content of the regulated speech.'" *Id.* (emphasis original) (*quoting Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984).

If the Act incidentally burdens speech, the Act is content-neutral because it burdens the source, not the subject. Importantly, this conclusion is supported by the *Bartnicki* Court which concluded that the Pennsylvania Wiretap Act[16] and Title III of the Omnibus Control and Safe Streets Act[17] are content-neutral regulations as to the publication of intercepted communications. 532 U.S. at 526.

---

[16] "Except as otherwise provided in this chapter, a person is guilty of a felony of the third degree if he (2) intentionally discloses or endeavors to disclose to any other person the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication." 18 Pa.C.S. § 5703.

[17] "Except as otherwise specifically provided in this chapter any person who – (c)intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication." 18 USCS § 2511(1)(c).

In fact, these statutes virtually mirror the Act's limitation on divulging intercepted communications,[18] and therefore, it only stands to reason that Section 14-2(a)(3) of the Act is also content-neutral. Additionally, because the Act's prohibition on the redistribution of illegally intercepted communications is content-neutral, a comparison of the remainder of the Act demonstrates that the regulation on the actual interception is content-neutral as well.

Clearly, based on the Supreme Court's prior rulings, ACLU cannot continue to pursue the premise that the Act favors one message over another. Therefore, even if the Act incidentally burdens ACLU's speech, the Act is content-neutral.

**2. The Act advances legitimate interests and is narrowly tailored.**

The Act is narrowly tailored because it targets and eliminates no more than the exact source of the "evil" it seeks to remedy. *Frisby v. Schultz*, 487 U.S. 474, 485 (1988). "As a general matter, it is clear that a State's interest in protecting the safety and convenience of persons using a public forum is a valid governmental objective." *Heffron v. Int'l Soc. for Krishna Consciousness*, 452 U.S. 640, 650 (1981); *see Madsen v. Women's Health Center*, 512 U.S. 753, 763 (1994) (the fact that buffer zone at health clinic that performs abortions covered people of particular viewpoint does not render such restriction content or viewpoint based). Consideration of a forum's special attributes is relevant to the constitutionality of a regulation since

---

[18] "A person commits eavesdropping when he: (3) uses or divulges…any information which he knows or reasonably should know was obtained through the use of an eavesdropping device." 720 ILCS 5/14-2(a)(3).

the significance of the governmental interest must be assessed in light of the characteristic nature and function of the particular forum involved. *Id.*

In Illinois, the Act advances legitimate privacy interests in all facets of daily life.[19] Consistent with the discussion in *Bartnicki*, the Act removes incentives for interception of private conversations and minimizes the harm to persons whose conversations have been illegally intercepted. 532 U.S. at 529. Moreover, in its general application, the Act requires consent from all participants to a communication before the communication may be intercepted, thus, alleviating any speculation as to the speaker's intention of whether he or she intended such communication to remain private by engaging in a *post hoc* analysis within the contours of the varying courts' interpretations of "reasonable" expectation of privacy. More specifically, the Act serves to provide greater clarity to the speaker's intended expectation of privacy by aligning the communication with a subjective (consent), rather than objective (reasonable), expectation of privacy. In other words, the Act's all-party-consent safeguards ensure that private conversations are

[19] Under the Illinois Constitution, "[t]he people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means." Ill. Const. Art. 1 § 6 (1970).

defined by the participants rather than subsequent, and potentially ambiguous, Fourth Amendment principles as demonstrated by other states' statutes.[20]

ACLU contends that the Act, as it is applied, illegitimately prohibits recording conversations of public employees with civilians in the public fora and, therefore, precludes ACLU's nascent expressive conduct about those conversations. ACLU further contends that the Act directly limits its tools of expression because it bans its expressive activity of "openly recording spoken words in the absence of a reasonable expectation of privacy." (ACLU Br. at 27.) In short, ACLU contends that privacy rights are illegitimate where it involves public employees engaged in conversations with civilians regarding matters of public concerns.

ACLU's argument is misplaced. As it applies to ACLU's program, the Act protects the legitimate privacy interests of both police officers and citizens. ACLU cites no authority where either of these groups of individuals forfeit their privacy interests because of the content and location in which conversations are discussed. In fact, other principles counsel against ACLU's argument. Specifically, a person does not surrender privacy rights based on the forum. *Katz*, 389 U.S. at 352 (the Fourth Amendment expectation of privacy protects people, not places). Moreover, individuals, including police officers, do not lose the guarantees of privacy under

[20] For example, *see Maryland v. Graber*, 12-K-10-0647, 2010 Md. Cir. Ct. LEXIS, at *7 (Cir. Ct. Md. Sept. 27, 2010) (citing Maryland law at Md. Cts. & Jud. Proc. § 10-402(a)(1) defining oral communication as any conversation or spoken words in private conversation); *Johnson v. Hawe*, 388 F.3d 676, 682 (9th Cir. 2004) (citing Washington's Privacy Act, Wash. Rev. Code. § 9.73.030(1)(a)-(b) which forbids recording only private communications); *Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995) (same).

the Fourth Amendment because they work for the government. *City of Ontario v. Quon*, 130 S. Ct. 2619, 2628 (2010).

At the very least, the civilians subject to an encounter with police officers retain their full privacy rights; however, according to ACLU, these civilians forgo those rights. (ACLU Br. at 37.) ACLU encourages the rule that the location of the conversation trumps the speaker's intention of privacy. However, although the encounters may be in public, not all public encounters are part of the traditional public forum. *Perry Education Assoc. v. Perry Local Educators' Assoc.*, 460 U.S. 37, 46 (1983). If ACLU were free to clandestinely audio record a civilian's conversation by virtue of it being held in public, most any conversation taking place outside one's home may be secretly recorded without consent of the participants, subject only to ACLU's discretion. Under ACLU's standard, it is realistic to predict the potential chilling effect on both public *and* private discourse which could result for fear of surreptitious recording. It is inconceivable to suggest that a communication in a public location cannot be uttered with any expectation of privacy.

In fact, it is quite legitimate to apply those same safeguards that the general public receives to police officers' conversations. Still, even if only limited, police officers retain an expectation of privacy. *Quon*, 130 S. Ct. at 2628. The Act protects that privacy through the ability to consent to conversations intended to communicate public ideas instead of such a draconian approach, as ACLU's asserts, where an officer's incidental and innocuous contacts with civilians are subject to public consumption. (ACLU Br. at 33-35, 41.) Moreover, it is legitimate

that non-consensual audio-recording is prohibited as to police officers in order to: encourage that civilians candidly speak with law enforcement, including those conversations conditioned on confidentiality; limit opportunities of the general public from gaining access to matters of national and local security; and reduce the likelihood of provoking persons during officers' mercurial encounters. *See Johnson*, 129 S. Ct. at 786 (traffic stops are "especially fraught with danger to police officers" where the risk of harm is minimized "if the officers routinely exercised unquestioned command of the situation"); *Branzburg*, 408 U.S. at 690.

Moreover, the Act's interests are narrowly tailored because the Act applies to non-consensual audio-recording of most communications, but for those specifically exempted (*i.e.* criminal conduct to oneself or one's family), while leaving open all other means of receiving and memorializing these communications. Even though the Act precludes ACLU from the non-consensual audio-recording of citizen-police encounters, ACLU retains sufficient alternative channels by which to gather these communications, *i.e.*, photography, video (without audio-recording), note-taking, eyewitness accounts, etc., as well as obtaining consent to audio-record. *See Hodgkins*, 355 F.3d at 1063 (an adequate alternative for expression does not have to be the speaker's best or first choice).

As a result, even if the Act infringes on speech, it serves as a reasonable time, place, and manner restriction.

### B. The Act does not restrict speech based on content or viewpoint.

ACLU contends that where a police officer is allowed unlimited discretion "to decide which conversations to record, at what point to start and stop recording, and which recordings of conversations to save or destroy, or to withhold or disclose" (ACLU Br. at 25), the end result is speaker-based or viewpoint discrimination. Additionally, ACLU argues that the difference in penalties for civilian-on-police eavesdropping as opposed to civilian-on-civilian eavesdropping amounts to content-based discrimination. *Id.* ACLU's argument that the Act results in speaker-discrimination because it permits, in limited situations, only police officers to audio-record is tenuous at best.

The Act is not a regulation on content because it does not confer a benefit or impose a burden on speech based on the ideas or views expressed. *Turner Broad. Sys.*, 512 U.S. at 643. Moreover, the enforcement of the Act is not activated by a particular message. *Id.* at 655. Under ACLU's scenario, it is unclear how speaker-based or content-based discrimination exists where both civilians' and police officers' content will be recorded, even if the recording is done at the hands of the police officers only. Police officers are not allowed to audio-record citizens with impunity; in fact, a closer reading of the Act reveals that the non-consensual interception of any conversation is prohibited but for limited exemptions and without preference to content. *Id.* at 658. ACLU, without any plausibility, speculates that law enforcement will manipulate audio-recordings, yet, this

position disregards the additional safeguards contained in section 14-3(h-15) of the Act.[21] Moreover, ACLU's argument related to disparate penalties within the Act for violations involving police officers are not content-based penalties; but rather, these penalties are enhanced based on the actors recorded. *See, e.g., Perry Education Assoc. v. Perry Local Educators' Assoc.*, 460 U.S. at 46 (discrimination based on status of speaker is not protected expression). Finally, insofar as ACLU's argument does not include its own speech that may be discriminated, ACLU lacks standing to raise this argument. *Arreola*, 546 F.3d at 799.

## V. The *Younger* abstention doctrine precludes federal interference through injunctive relief.

The *Younger* abstention doctrine precludes federal interference and requires denial of ACLU's request for relief to enjoin operation of the Act.[22] In *Ex parte Young*, 209 U.S. 123 (1908), the Court established the doctrine "that when absolutely necessary for protection of constitutional rights courts of the United States have power to enjoin state officers from instituting criminal actions."

---

[21] "Recordings made under subsection (h), (h-5), or (h-10) shall be retained by the law enforcement agency that employs the peace officer who made the recordings for a storage period of 90 days, unless the recordings are made as a part of an arrest or the recordings are deemed evidence in any criminal, civil, or administrative proceeding and then the recordings must only be destroyed upon a final disposition and an order from the court. Under no circumstances shall any recording be altered or erased prior to the expiration of the designated storage period. Upon completion of the storage period, the recording medium may be erased and reissued for operational use." 720 ILCS 5/14-3(h-15) (2011).

[22] The State's Attorney does not argue *Younger* abstention doctrine as a defense to ACLU's claim for declaratory relief. *Steffel v. Thompson*, 415 U.S. 452, 523-24 (1974); *see Roe v. Wade*, 410 U.S. 113, 125-127 (1973).

*Younger v. Harris*, 401 U.S. 37, 45 (1971). "But this may not be done except under extraordinary circumstances where the danger of irreparable loss is both great and immediate." *Id.* "Ordinarily, there should be no interference with such officers" and "[t]he accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection." *Id.* The threat to ACLU's federally protected right must be one that cannot be eliminated by his defense against a single criminal prosecution. *Id.* at 46.

Moreover, "[a] criminal prosecution under a statute regulating expression usually involves imponderables and contingencies that themselves may inhibit the full exercise of First Amendment Freedoms," but this "chilling effect" should not by itself justify federal intervention. *Id.* at 50 (*quoting Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965)). The existence of a "chilling effect," even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action. *Id.* at 51. Where a statute does not directly abridge free speech, but while regulating a subject within the State's power, tends to have the incidental effect of inhibiting First Amendment rights, it is well settled that the statute can be upheld if the effect on speech is minor in relation to the need for control of the conduct and the lack of alternative means for doing so." *Id.* Although there may be extraordinary circumstances which justify federal intervention through an injunction, the usual prerequisites to federal intervention require bad faith and harassment. *Id.* at 53.

In this matter, ACLU's insistence that it faces threat of imminent prosecution for standing purposes has inextricably implicated the *Younger* doctrine. Presumably, ACLU will reply that *Younger* does not apply because there is no pending criminal prosecution against ACLU; however, this Court has articulated a broader interpretation for abstention where the abstention doctrine may apply where ACLU faces *imminent* prosecution. If a criminal prosecution is imminent, then a federal court "might well abstain on comity grounds – for the prosecution would offer [the plaintiff] an opportunity to present its legal arguments, and states are entitled to insist that their criminal courts resolve the entire dispute." *520 South Michigan Avenue Associates, Ltd. v. Devine*, 433 F.3d 961, 963 (7th Cir. 2005); *see Boyle*, 401 U.S. at 81 (denied equitable relief without a pending prosecution based, in part, on *Younger*).

Moreover, ACLU does not show that the State's Attorney has or intends to use the Act in bad faith and in order to harass a class of citizens. *Id.* at 53. Under *Younger*, ACLU has not identified the extraordinary circumstances which justify federal invention of the Act. Therefore, *Younger* serves to deny ACLU injunctive relief.

**VI. ACLU cannot establish the elements for a preliminary injunction.**

ACLU's argument for a preliminary injunction is moot because ACLU has invited this Court to adjudicate the merits of its First Amendment challenge and grant injunctive or declaratory relief. In any event, the purpose of a preliminary injunction is to maintain the *status quo*, not to give the moving party affirmative

relief equivalent to the ultimate relief sought. *Brown v. Kerr-McGee Chem. Corp.,* 767 F.2d 1234, 1240 (7th Cir. 1985). As the United States Supreme Court has observed:

> It goes without saying that an injunction is an equitable remedy. It "is not a remedy which issues as of course," *Harrisonville* v. *W. S. Dickey Clay Mfg. Co*., 289 U.S. 334, 337-338 (1933), or "to restrain an act the injurious consequences of which are merely trifling." *Consolidated Canal Co. v. Mesa Canal Co*., 177 U.S. 296, 302 (1900). An injunction should issue only where the intervention of a court of equity "is essential in order effectually to protect property rights against injuries otherwise irremediable."

*Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-312 (1982). A preliminary injunction, to be sure, is "an 'extraordinary and drastic remedy,' 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, p 129 (2d ed. 1995) [and] is never awarded as of right." *Munaf v. Geren*, 128 S. Ct. 2207, 2219 (2008), *citing Yakus* v. *United States*, 321 U.S. 414, 440 (1944). ACLU is not seeking to maintain the status quo; but rather, ACLU is seeking to implement a program which may result in the prosecution of its members.

ACLU does not meet the criteria for a preliminary injunction. For a preliminary injunction, ACLU must show that: (1) there is a likelihood of success on the merits of the case, (2) no adequate remedy at law exists, (3) the movant will suffer irreparable harm if the injunction is not granted, and (4) the effect of granting or denying the injunction will have on the "public interest." *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1114 (7th Cir. 1997).

Finally, ACLU has asked this Court to deal with the merits of its challenge to the Act, including injunctive relief, thus obviating the necessity of going through each of the factors for a preliminary injunction. The State's Attorney maintains that if this matter is remanded, this issue be afforded rehearing so that the district court may enter findings as to each factor.

## CONCLUSION

For the above stated reasons, the State's Attorney requests this Court affirm the decision of the district court in dismissing ALCU's complaint, denying ACLU's motion for leave to amend or alter judgment, and denying ACLU's motion for preliminary injunction.

Respectfully submitted,

ANITA ALVAREZ
State's Attorney of Cook County

By: /s/ James C. Pullos
James C. Pullos
Assistant State's Attorney

Patrick T. Driscoll, Jr.
Deputy State's Attorney
Chief, Civil Actions Bureau

Donald J. Pechous
Paul A. Castiglione
Jeffrey S. McCutchan
James C. Pullos
Assistant State's Attorneys
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-5105
*Attorneys for the Defendant-Appellee, Anita Alvarez*

No. 11-1286

**UNITES STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

| | |
|---|---|
| The American Civil Liberties Union,<br>Plaintiff-Appellant,<br><br>v.<br><br>Anita Alvarez,<br>Defendant-Appellee. | Appeal From The United States<br>District Court<br>For The Northern District Of<br>Illinois, Eastern Division<br><br>Case No. 1:10-cv-5235<br>The Honorable Suzanne Conlon |

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,219 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in 12 point font and footnotes in 12 point font in Century Schoolbook type.

/s/ James C. Pullos
James C. Pullos
Assistant State's Attorney
Attorney for Defendant-Appellee

Dated: July 26, 2011

No. 11-1286

**UNITES STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

| | |
|---|---|
| The American Civil Liberties Union,<br>Plaintiff-Appellant,<br><br>v.<br><br>Anita Alvarez,<br>Defendant-Appellee. | Appeal From The United States District Court For The Northern District Of Illinois, Eastern Division<br><br>Case No. 1:10-cv-5235<br>The Honorable Suzanne Conlon |

Circuit Rule 31(e)(1) Certification

I, the undersigned, counsel for the Defendant-Appellee, Anita Alvarez, hereby certify that I have filed electronically, pursuant to Circuit Rule 31(e), versions of the brief that are available in non-scanned PDF format.

/s/ James C. Pullos
James C. Pullos
Assistant State's Attorney
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, Illinois 60602

# PROOF OF SERVICE

I, the undersigned, counsel for the Defendant-Appellee Anita Alvarez, hereby certify that on July 26, 2011, two copies of the foregoing Brief of Appellee, as well as a digital version containing the brief, were sent by United States mail to the following individual:

Richard J. O'Brien
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603

/s/ James C. Pullos
James C. Pullos
Assistant State's Attorney
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-5105

Dated: July 26, 2011